# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

UNITED STATES OF AMERICA

v.

PETER SALAZAR

**FILED**
SEP 2 7 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

MAGISTRATE JUDGE COLE

**CRIMINAL COMPLAINT**

CASE NUMBER: 05CR814

I, <u>Peter J. Vukovich</u>, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about <u>May 1, 2002,</u> in <u>Kane</u> County, in the <u>Northern</u> District of <u>Illinois</u> defendant

> knowingly and intentionally possessed with the intent to distribute a controlled substance, namely, in excess of 50 grams of mixtures containing cocaine base in the form of crack cocaine, a Schedule II Narcotic Drug Controlled Substance;

in violation of Title <u>21</u> United States Code, Section <u>841(a)(1)</u>; and on or about <u>June 12, 2002,</u> in <u>Kane</u> County, in the <u>Northern</u> District of <u>Illinois</u> defendant

> knowingly and intentionally possessed with the intent to distribute a controlled substance, namely, in excess of 5 grams of mixtures containing cocaine base in the form of crack cocaine, a Schedule II Narcotic Drug Controlled Substance;

in violation of Title <u>21</u> United States Code, Section <u>841(a)(1)</u>

I further state that I am a <u>Special Agent of the Bureau of Alcohol, Tobacco & Firearms</u> and that this complaint is based on the following facts:
Official Title

**SEE ATTACHED AFFIDAVIT**

Continued on the attached sheet and made a part hereof: <u>X</u> Yes ___ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

September 27, 2005                           at    Chicago, Illinois
Date                                                City and State

JEFFREY COLE                                _____
United States Magistrate Judge              (Signature of Judicial Officer)
Title of Judicial Officer

STATE OF ILLINOIS        )
                         )  SS
COUNTY OF COOK           )

## AFFIDAVIT

I, Peter J. Vukovich, first being duly sworn, states the following under oath:

1. I am currently employed as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, Department of Justice (ATF), and have been so employed since 2001. During that time, I have participated in numerous investigations involving firearms and controlled substances offenses.

2. The information contained in this affidavit is based on my personal knowledge as well as information obtained from documents, witnesses, and other federal, state, and local law enforcement officials.

3. I make this affidavit for the limited purpose of establishing probable cause in support of a complaint charging Peter SALAZAR with distribution of a controlled substance, namely cocaine base in the form of crack cocaine (hereinafter "crack cocaine"), in violation of Title 21, United States Code, Section 841(a)(1). It does not include all the information acquired regarding this investigation.

4. Part of the information underlying this affidavit was obtained through the use of a confidential informant (hereinafter "CI"). The CI has admitted to law enforcement officers that he was an active gang member in the Latin Kings ("LKs") since the mid-1990s and that he was affiliated with the Aurora faction of the LKs since approximately 1997. In debriefings with law enforcement officers, the CI admitted that, prior to his/her cooperation with law enforcement officers, he participated in illegal narcotics transactions and other illegal activities, including the unlawful possession of firearms, consistent with membership in a street gang.

5. In March 2002, the CI began cooperating with law enforcement authorities. Among other things, the CI, under the direction and control of ATF agents, made seven purchases of illegal narcotics and one purchase of a sawed-off shotgun. The CI also provided information concerning the illegal activities of the Aurora LK and Insane Deuces ("ID") street gangs. The CI's cooperative activities were used in furtherance of an application for at least one court-authorized Title III wiretap, as well as numerous arrest and search warrants. The CI was convicted of a minimum of six felony crimes prior to CI's cooperation with ATF. In October 2003, the CI was convicted of residential burglary in Cook County, Illinois, and sentenced to a term of imprisonment.

6. The information contained herein that was obtained by this CI has been corroborated and cross-checked, where possible, by tape recordings, surveillance, other investigations, and law enforcement computer systems and documents. Law enforcement officers have taken part in the interview process, as well as analysis of the information provided by the CI, and have found the information to be truthful and reliable. In addition, the CI has been corroborated during the undercover operations with LK and ID gang members through the use of electronic surveillance techniques, including both video and audio recordings of the undercover meetings and transactions.

**The May 1, 2002 Deal**

7. On April 26, 2002, the CI had an unrecorded and unmonitored conversation with Peter SALAZAR ("SALAZAR"). According to the CI, in that conversation, the CI made preliminary arrangements to purchase two ounces of crack cocaine from SALAZAR. The CI reported this activity to ATF and other law enforcement personnel and provided SALAZAR'S telephone number as (630) 851-1434.

8. On May 1, 2002, the CI made a controlled purchase of 53.9 grams (net weight) of crack cocaine from SALAZAR in exchange for $1,700 in Federal Bureau of Investigation ("FBI")

official funds. This transaction, which was recorded, occurred inside SALAZAR'S house located at 2059 Foxtail Drive, in Aurora, Illinois, as set out below.

9. Earlier the same date, the CI reported having three unrecorded telephone conversations with SALAZAR, during which SALAZAR demanded the price of $850 per ounce. The CI agreed to purchase the crack cocaine later the same day.

10. Later the same day, ATF and other law enforcement personnel met with the CI at a pre-arranged location and viewed the CI's cellular telephone, noting connections to telephone number (630) 851-1434. The law enforcement personnel debriefed the CI and formulated plans to make a controlled purchase of narcotics from SALAZAR.

11. On the same day, at approximately 1:42 PM, the CI, in the company of law enforcement personnel, conducted a consensually recorded telephone call to SALAZAR at (630) 851-1434. During the conversation, SALAZAR directed the CI to come over to his house alone and provided directions.

12. Following the recorded telephone call, the CI and CI's vehicle were searched for contraband, with negative results. The CI was provided with electronic recording equipment and $1,700 in official funds and directed to travel to SALAZAR's house. The CI drove, under law enforcement surveillance, to SALAZAR'S house at 2059 Foxtail Drive, in Aurora, Illinois. The CI met with SALAZAR inside the house and this meeting was recorded over the CI's body recorder. During the meeting, the CI paid SALAZAR the $1,700 in official funds and SALAZAR provided the CI with one plastic baggie containing an off-white rocky substance, later determined by laboratory analysis to be 53 grams of crack cocaine. During the recorded transaction, the CI provided the official funds to SALAZAR, who started counting the funds. SALAZAR then stated, "Alright, What's up? Why's this money have a mark, dude? You working for the police or

somethin'?" The CI responded with laughter and stated "This shit better be good". SALAZAR responded "This stuff's five-star, dude. Here you go, man," indicating the transfer of the crack-based cocaine to the CI. Later, the CI inquired "...Does this weigh out?" and SALAZAR responded "Yeah". The CI further asked "Two of them?" referring to two ounces, and SALAZAR responded, "Yup, Fifty-six, it was bad, dude, when it cooked up, dude." I understand SALAZAR'S responses as indicating he was aware of the manufacture of the powder cocaine into crack-based cocaine and assured the CI that the final product weighed 56 grams.

13. Following the meeting, the CI drove to a prearranged location, under law enforcement surveillance, and surrendered the drug evidence and recording equipment to law enforcement personnel. The CI and CI's vehicle were again searched for contraband, with negative results.

14. On June 11, 2002, Forensic Chemist Kevin R. Erskine of the Drug Enforcement Administration's North Central Laboratory reported conducting an analysis of the drug evidence purchased from SALAZAR on May 1, 2002, and determined the substance to contain cocaine base weighing 53.9 grams (net weight).

**The June 12, 2002 Deal**

15. On June 12, 2002, the CI made a controlled purchase of 25.3 (net weight) grams of crack cocaine from Peter SALAZAR for $1,700 ATF official funds. The transaction, which was recorded, occurred inside SALAZAR'S house at 2059 Foxtail Drive, in Aurora, Illinois, as set out below.

16. The CI said that, shortly before June 12, 2002, the CI contacted SALAZAR and, during a unrecorded and unmonitored telephone conversation, made preliminary arrangements to purchase a controlled substance from SALAZAR, namely two ounces of crack cocaine. The CI later reported this activity to ATF and other law enforcement personnel.

17.     On June 12, 2002, the CI met with ATF and other law enforcement personnel at a pre-arranged location and formulated plans to make a controlled purchase of narcotics from SALAZAR. At approximately 2:08 PM, the CI, in the company of law enforcement personnel, attempted to conduct a consensually recorded telephone call to SALAZAR at (630) 851-1434. The recording equipment malfunctioned; however, law enforcement personnel present overheard the CI leave a message with SALAZAR stating CI was en route to SALAZAR'S house.

18.     Following the telephone call, the CI and CI's vehicle were searched for contraband, with negative results. The CI was provided with electronic recording equipment and $1,700 in official funds and directed to travel to SALAZAR'S house. The CI drove, under law enforcement surveillance, to SALAZAR'S house at 2059 Foxtail Drive, in Aurora, Illinois. The CI met with SALAZAR inside the house and this meeting was recorded over the CI's body recorder. During the recorded meeting, SALAZAR solicited the CI to provide information on the whereabouts of Latin Kings for the Insane Deuces to shoot them.  SALAZAR stated, in part, "...or even find out where's a fucking King party at, dude. Find out where the King party and we'll just go through and spray all those motha fuckers..." The CI, at the previous direction of law enforcement officers, advised SALAZAR the CI would need some time to consider this proposal. Later in the conversation, the CI asked SALAZAR "This weigh out?"  SALAZAR responded, "Yeah, fifty-six!" CI provided SALAZAR with the $1,700 in official funds and SALAZAR provided the CI with one plastic bag containing a yellow rock-like substance, later determined by laboratory analysis to be crack cocaine. Following the meeting inside the house, SALAZAR accompanied the CI out to the CI's vehicle for a brief conversation. This activity was video recorded, observed by law enforcement personnel, and resulted in positive identification of SALAZAR meeting with the CI. Following the meeting, the CI drove to a pre-arranged location, under law enforcement surveillance, and surrendered the drug

evidence and recording equipment to ATF. The CI and the CI's vehicle were again searched, with negative results.

19. On January 14, 2003, Forensic Scientist Aurelia Lynn Rizo, for the Illinois State Police's Joliet Forensic Laboratory, reported conducting an analysis of the drug evidence purchased from SALAZAR on June 12, 2002, and determined the substance to contain cocaine base weighing 25.3 grams (net weight).

**November 5, 2003 Interview**

20. On November 5, 2003, ATF Special Agents Mark Anton and Daniel Young conducted a non-custodial interview with Peter SALAZAR. During that interview, SALAZAR admitted, among other things, to being a former member of the Aurora Latin Kings street gang and subsequently a member of their rival, the Aurora Insane Deuces street gang. SALAZAR admitted to unlawfully possessing and selling cocaine and marijuana since 1992.

Peter J. Vukovich
ATF Special Agent

Sworn to before me this ___ day of September 2005.

Jeffrey Cole
United States Magistrate Judge